UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GERARDO HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>AMIDRON ENERGY, LLC, et al.,<br><br>Defendants. | Case No. 5:21-cv-01011-EJD<br><br>**ORDER GRANTING CROSS-MOTION FOR SUMMARY JUDGMENT; DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 55, 62 |

Plaintiff, Gerardo Hernandez ("Plaintiff"), filed suit against Defendants Amidron Energy, LLC dba 76 #37993 ("Amidron"), HMR Associates 1 LLC ("HMR"), 7-Eleven, Inc., ("7-Eleven"), and AIT Venture Inc. ("AIT") (collectively "Defendants") alleging that the conditions at Defendants' gas station violate the Americans with Disabilities Act ("ADA") and the California Unruh Civil Rights Act ("Unruh Act"). Second Am. Compl. ("SAC"), ECF No. 41. Before the Court is Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment. Pl.'s Mot. for Summ. J. ("MSJ"), ECF No. 55; Defs.' Cross Mot. for Summ. J. ("Cross-MSJ"), ECF No. 62. The Parties have fully briefed both motions. Defs.' Opp'n to MSJ ("Opp'n to MSJ"), ECF No. 56; Pl.'s Reply in Support of MSJ ("Reply ISO MSJ"), ECF No. 57; Pl.'s Opp'n to Cross-MSJ (Opp'n to Cross-MSJ"), ECF No. 63; Defs.' Reply in Support of Cross-MSJ ("Reply ISO Cross-MSJ"), ECF No. 64.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS** Defendants' cross-motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## I.     BACKGROUND

### A.     Parties

Plaintiff, Gerardo Hernandez, lost his ability to walk and nearly all sensation in his legs as the result of a gunshot in 2007.  Declaration of Gerardo Hernandez ("Hernandez Decl.") ¶ 2, ECF No. 55-3.  Plaintiff is confined to a wheelchair.  *Id.* ¶ 3.

Defendant 7-Eleven owns a gas station known as 76 #37997 located at 705 San Antonio Road in Palo Alto, California ("Gas Station").  Declaration of Tanya E. Moore ("Moore Decl.") ¶ 6, ECF No. 55-1.

Defendant HMR has owned the real property in which the Gas Station is located since 2013.  HMR Answer ¶ 7, ECF No. 16.

7-Eleven contracts with operators to conduct the daily operations of the Gas Station. Moore Decl., Ex. A at 9:22–10:4, ECF No. 55-2.  Defendant Amidron operated the Gas Station in 2020.  Moore Decl., Ex. B at 54:9–14, ECF No. 55-2.  Defendant AIT currently operates the Gas Station as of July 2021.  Moore Decl., Ex. D at 16:22–25, ECF No. 55-2.

### B.     Factual Background

This case arises out of Plaintiff's visit to the Gas Station on December 12, 2020.  *See* SAC. Plaintiff, along with his girlfriend, mother, niece, and nephew, drove to the Gas Station on their way home from Walmart, located approximately 1.5 miles from the Gas Station and between Plaintiff's home and Walmart.  Hernandez Decl. ¶¶ 6–9.  Plaintiff was driving.  *Id.* ¶ 10.  At the Gas Station, the cashier booth, along with some products for sale, sits on top of a platform with a 5-to-6.75-inch curb.  Declaration of Plaintiff's Expert, Michael Bluhm ("Bluhm Decl.") ¶ 15, ECF No. 5.  Because Plaintiff was with other passengers, Plaintiff did not attempt to get out of the car to pay for gas himself.  *Id.* ¶ 15.  Instead, Plaintiff's mother stepped out of the car to pay for the gas in cash at the cashier booth.  *Id.*  Whether Plaintiff's mother stepped out of the car to pay for the gas specifically because Plaintiff saw that he could not approach the cashier booth is disputed. *Compare id., with* Deposition of Gerardo Hernandez ("Hernandez Depo.") at 57:20–58:8, ECF No. 56-6 (conflicting statements).  Whether Plaintiff was aware of the platform during this visit to

1    the Gas Station is disputed.  *Compare* Hernandez Decl. ¶¶ 13–14 *, with* Hernandez Depo. 57:20–

2    58:8 (conflicting statements).  However, at some point, either during the visit or later that day,

3    Plaintiff gained actual knowledge of the platform at the Gas Station and filed this present action.

4    *Id.*  Plaintiff testified that he has brought more than fifty accessibility lawsuits primarily against

5    gas stations since 2015.  Hernandez Depo. 27:3–9, 38:5–12, 74:23–75:14.

6         Plaintiff alleges that the platform violates the ADA.  Because Plaintiff concedes that

7    removing the architectural barrier is not readily achievable, Plaintiff requests that Defendants

8    implement the following alternative accommodations to provide equal access to the Gas Station's

9    services:

10        1.    <u>Signage.</u> Conspicuous signage, including the ISA, posted
          where it can be seen from every fuel pump advising customers with
11        disabilities that they may honk their horn for assistance with fuel
          purchases as well as Gas Station products for sale . . . .

12        2.    <u>Product Information.</u> A means by which Gas Station
          employees can provide a listing to persons with disabilities regarding
13        all products offered for sale. This can be as simple as employees
          taking photographs on a company-provided iPad (or similar) each
14        morning of the product displays which could be shown to patrons with
          disabilities, or a printed menu of products . . . .
15
          3.    <u>Training.</u> Training to ensure all employees know how to
16        assist persons with disabilities with payments, gas pumping, and
          product purchases, as well as how to respond to horn honking or
17        calling (whichever means Defendants choose to alert cashiers to
          persons with disabilities who need assistance[)].
18
     MSJ 22.  In addition to injunctive relief under the ADA, Plaintiff also requests statutory damages
19
     in the amount of $4,000 under the Unruh Act.  SAC.
20
          After filing this action, Plaintiff hired Michael Bluhm ("Mr. Bluhm"), an individual trained
21
     and certified by the State of California as qualified to evaluate and document access issues at
22
     businesses.  Bluhm Decl. ¶¶ 2–9; 11.  Mr. Bluhm visited the Gas Station on April 26, 2021, to
23
     evaluate its ADA compliance.  *Id.* ¶ 11.  Mr. Bluhm measured the platform and observed the kiosk
24
     on the platform containing various products for sale.  *Id.* ¶¶ 12, 15.  Mr. Bluhm also discovered for
25
     the first time that the gas pumps each had a green button measuring approximately 1/2 inch by 3/4
26
     inch with the words "call attendant" ("call button").  *Id.* ¶ 17.  Mr. Bluhm pressed at least three
27

28   Case No.: 5:21-cv-01011-EJD
     ORDER GRANTING CROSS-MSJ; DENYING MSJ
                                              3

United States District Court
Northern District of California

buttons and a Gas Station attendant did not come out.  *Id.*  Plaintiff later hired Fred Kim ("Mr. Kim"), a private investigator.  Declaration of Fred Kim ("Kim Decl."), ECF No. 55-9.  Mr. Kim stated in his declaration that he visited the Gas Station on July 30, 2022, and he approached the kiosk in a wheelchair to attempt to purchase a product, but the attendant did not appear to see or hear him.  *Id.* ¶¶ 6–7.

AIT's general manager, Sherri Blanco ("Ms. Blanco"), stated that she has personal knowledge that each of the ten gas pumps have a working call attendant button that notifies the station attendant that assistance is needed, and the call button is also next to an International Symbol of Accessibility icon.  Declaration of Sherri Blanco ("Blanco Dec.") ¶¶ 3–5, ECF No. 56-10.  Ms. Blanco also stated that the Station has two signs posted letting customers know that assistance is available.  *Id.* ¶ 3.  Further, Ms. Blanco has personal knowledge that each employee is trained to assist customers upon request, including pumping the patron's gas, retrieving products the patron wishes to purchase, and facilitating the patron's purchase by existing the kiosk to facilitate payment.  *Id.*  A former employee, Preet Singh ("Mr. Singh"), testified that he had been trained to help all customers, and he did in fact help disabled customers when he could, given that there is only one employee working at a time.  *See* Deposition of Preet Singh ("Singh Dep.") 39–52, ECF No. 56-7.  Mr. Singh testified that typically a disabled customer would drive up to the window, honk their horn, or approach the kiosk outside to get the employee's attention.  *Id.* at 39–41.  When Mr. Singh saw the customer, he would approach them to assist in paying for gas in cash or purchasing products in the kiosk.  *Id.* at 41.

At the time of Plaintiff's visit, he did know these accommodations existed—he did not attempt to use the call button, did not read the signs on the window or refrigerator, and did not attempt to gain the attention of an employee in any manner.  Hernandez Dec. ¶¶ 13–18; Hernandez Depo. 57:23–58:8.

### C.    Procedural History

Plaintiff filed his Second Amended Complaint on March 29, 2022.  ECF No. 41.

Defendants filed answers.  ECF Nos. 44, 50.  Fact discovery closed on July 6, 2022.  ECF No. 40.

Case No.: 5:21-cv-01011-EJD
ORDER GRANTING CROSS-MSJ; DENYING MSJ
4

On November 3, 2022, Plaintiff filed his motion for summary judgment.  MSJ.  Defendants filed an opposition, and Plaintiff filed a reply.  Opp'n to MSJ; Reply ISO MSJ.  In Defendants' opposition, they included for the first time Ms. Blanco's declaration and other evidence of existing ADA compliant accommodations to argue that Plaintiff's claims are moot.  *See* Opp'n to MSJ. However, Defendants failed to disclose Ms. Blanco as a witness in their initial disclosures or supplemental disclosure, as required under Rule 26, and the issue of mootness was not properly in front of the Court.  *See* Order Deferring Judgment, ECF No. 61.  The Court re-opened fact discovery to afford Defendants the opportunity to remedy this discovery deficiency and properly address mootness in a cross-motion for summary judgment.  *Id.*  Fact discovery closed again on July 29, 2023.  *Id.*  On August 11, 2023, Defendants filed their cross-motion for summary judgment.  Cross-MSJ.  Plaintiff filed an opposition, and Defendants filed a reply.  Opp'n to Cross-MSJ; Reply ISO Cross-MSJ.

Plaintiff requests judgment finding that Defendants violated the ADA and the Unruh Act. MSJ.  Defendants request judgment finding that Plaintiff lacks standing under Article III and Title III of the ADA, Plaintiff's claims are moot, and the Court should decline to exercise supplemental jurisdiction of Plaintiff's Unruh Act claim.  Cross-MSJ.

## II.    LEGAL STANDARD

### A.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only when the moving party shows that there is no genuine dispute of material fact.  A genuine dispute exists if there is sufficient evidence that a reasonable fact finder could decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And that dispute is material if it might affect the outcome of the suit.  *Id.*  In determining if a genuine dispute of material fact exists, a court must "tak[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party bears the burden of persuading the Court that there is no genuine dispute

United States District Court
Northern District of California

1    of material fact, and it also bears the initial burden of producing evidence that demonstrates there

2    is no dispute.  *Cunningham v. Medtronic, Inc.*, 2018 WL 4053446, at *2 (N.D. Cal. Aug. 24,

3    2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  When the moving party bears

4    the ultimate burden of persuasion, its initial burden of production is to "establish 'beyond

5    controversy every essential element of'" its claim or defense.  *S. Cal. Gas Co. v. City of Santa

6    Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  If the moving party satisfies this initial

7    burden, the nonmoving party can nonetheless defeat summary judgment by showing "the

8    evidence, taken as a whole, could lead a rational trier of fact to find in its favor."  *Id.*

9    **B.     Americans with Disabilities Act ("ADA")**

10         Title III of the ADA prohibits discrimination, including "benign neglect, apathy, and

11   indifference," on the basis of disabilities within places of public accommodation.  42 U.S.C. §

12   12182(a).  The ADA states that "[n]o individual shall be discriminated against on the basis of

13   disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

14   or accommodations of any place of public accommodation by any person who owns, leases (or

15   leases to), or operates a place of public accommodation."  *Id.*  The Ninth Circuit evaluates claims

16   arising under the statute in three prongs: (1) whether the plaintiff is disabled within the meaning of

17   the ADA; (2) whether the defendant "owns, leases (or leases to), or operates" a place of public

18   accommodation; and (3) whether the plaintiff was denied public accommodations by the defendant

19   because of their disability.  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

20         If the issue is an architectural barrier, and removing the barrier is not readily available, the

21   entity is required "to make such goods, services, facilities, privileges, advantages, or

22   accommodations available through alternative methods if such methods are readily achievable."

23   42 U.S.C. § 12182(b)(2)(A).  "Public accommodations must start by considering how their

24   facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests

25   with a like experience."  *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir.

26   2012).  However, "[f]acilities are not required to make any and all possible accommodations that

27   would provide full and equal access to disabled patrons; they need only make accommodations

United States District Court
Northern District of California

that are reasonable. In deciding what's reasonable, facilities may consider the costs of such

accommodations, disruption of their business and safety." *Id.*

Defendants have provided the Court guidance from the United States Department of

Justice Civil Rights Division ("DOJ"), which states:

> If necessary to provide access, gas stations must –
>
> - Provide refueling assistance upon the request of an individual with a disability. A service station or convenience store is not required to provide such service at any time that it is operating on a remote control basis with a single employee, but is encouraged to do so, if feasible.
>
> - Let patrons know (e.g., through appropriate signs) that customers with disabilities can obtain refueling assistance by either honking or otherwise signaling an employee.
>
> - Provide the refueling assistance without any charge beyond the self-serve price.

Opp'n to MSJ 8–9.

## III.    DISCUSSION

### A.    Evidentiary Objections

As an initial matter, Defendants object to the declarations of Mirella Lopez, Maria

Hernandez, and Gerardo Hernandez to the extent they contain hearsay, lack foundation for the

facts attested to, and/or are speculative.  Opp'n to MSJ 2.  Defendants also object to paragraphs

14, 18, and 19 of the declaration of Michael Bluhm on the grounds that these attestations lack

foundation or a proper basis, are improper opinion, and are speculative.  *Id.*

Plaintiff did not rely on the declarations of Mirella Lopez and Maria Hernandez or

paragraphs 14, 18, and 19 of the declaration of Michael Bluhm to support or dispute a material

fact.  Therefore, the Court does not rely on this evidence in its Order and finds it unnecessary to

address Defendant's objection at this time.  *See* Fed. Rules Civ. Pro. 56(c)(2).  The Court only

relies on statements from Mr. Hernandez to the extent that they do not contain hearsay, lack

foundation, or contain speculation.

In Plaintiff's original reply in support of his motion for summary judgment, Plaintiff

1    objected to Ms. Blanco's statement on the grounds that Defendants failed to disclose Ms. Blanco as

2    a witness.  Reply ISO MSJ 1.  As discussed above, the Court reopened discovery so Defendants

3    could cure this discovery deficiency and give Plaintiff the opportunity to depose Ms. Blanco.  *See*

4    Order Deferring Judgment.  The Court finds that Plaintiff has now been given the opportunity to

5    question Ms. Blanco and the deficiencies identified in the original evidentiary objections have been

6    cured.

7    **B.    Defendants' Cross-Motion for Summary Judgment**

8    Defendants filed a cross-motion for summary judgment arguing that Plaintiff never suffered

9    an injury-in-fact, there is no threat of future injury, Plaintiff's claims are moot, and the Court should

10   decline to exercise supplemental jurisdiction over the Unruh Act claim.  Cross-MSJ 1.  Because the

11   Court must first establish jurisdiction, the Court will begin its discussion with Defendants' cross-

12   motion for summary judgment before moving to Plaintiff's motion for summary judgment.

13   **1.    Article III Standing**

14   To establish Article III standing, a plaintiff "must demonstrate that he has suffered an

15   injury-in-fact, that the injury is traceable to the Store's actions, and that the injury can be redressed

16   by a favorable decision."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir.

17   2011).  In an ADA action, to allege an Article III injury-in-fact, a plaintiff must demonstrate that

18   they encountered a barrier related to their disability that affected them, and that it interfered with

19   their "full and equal enjoyment" of the facility.  *Id.* at 947–48.  Once a plaintiff encounters such a

20   barrier, "he has already suffered an injury in fact traceable to the defendant's conduct and capable

21   of being redressed by the courts, and so he possesses standing under Article III."  *Id.* at 946.

22   Defendants argue that Plaintiff has failed to establish an injury-in-fact because he did not

23   personally encounter the barrier to access.  Cross-MSJ 5.  Instead, Plaintiff's mother got out of the

24   car to pay cash for the gas at the cashier booth on top of the platform.  *Id.*  Plaintiff stated in his

25   deposition that his mother got out to pay for gas for no particular reason, and only after leaving the

26   gas station did Plaintiff realize that he would have encountered a barrier to services if he had been

27   there alone.  *Id.*; Hernandez Depo. at 57:20–58:8, ECF No. 56-6.  Defendants argue that Plaintiff's

28   

United States District Court
Northern District of California

1  deposition reveals he never suffered an injury-in-fact because he never even saw the barrier during

2  this visit.  Cross-MSJ 5.  Plaintiff argues that these are disputed facts.  Opp'n to Cross-MSJ 7.  In

3  Plaintiff's declaration, he stated that he did in fact observe the barrier at the Gas Station and sent

4  his mother inside to pay because he knew he would be unable to approach the cashier booth due to

5  the platform.  *Id.*; Hernandez Decl.  ¶¶ 13–15.  Regardless, Plaintiff argues that his personal

6  encounter with the barrier is irrelevant to this standing inquiry because he is only required to have

7  actual knowledge of the barrier.  Opp'n to Cross-MSJ 7.

8         Whether Plaintiff observed the barrier at the time of the incident or gained knowledge of it

9  after leaving the station is a disputed fact.  However, this is not a material fact—it makes no

10  difference whether Plaintiff himself attempted to purchase the gas, saw the platform and decided

11  to send his mother, or didn't see the barrier at all during this visit.  The Ninth Circuit has held that

12  the standard for an injury-in-fact in this context is actual knowledge of the barrier, not personal

13  encounter with the barrier.  *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1099

14  (9th Cir. 2017) ("It is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that

15  knowledge, that is determinative.") (quoting *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d

16  1133, 1135 (9th Cir. 2002)); *see also Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) ("[T]he

17  plaintiff need not personally encounter the barrier or physically visit the place of public

18  accommodation.").  In *Civil Rights Education and Enforcement Center*, the class of disabled

19  plaintiffs alleged that various hotels engaged in ADA violations in their transportation services.

20  *C.R. Educ. & Enf't Ctr.*, 867 F.3d at 1099–100.  However, the plaintiffs had not actually visited

21  the hotels where they alleged ADA violations prior to filing suit.  *Id.*  Instead, they gained

22  knowledge of the alleged ADA violations by calling to inquire about the availability of accessible

23  transportation.  *Id.*  The Ninth Circuit held that a plaintiff does not need to personally encounter a

24  barrier, or even visit the place of public accommodation, in order to suffer an injury in fact, so

25  long as they were affected in some way by the barrier.  *Id.*; *see also Pickern*, 293 F.3d at 1043–44

26  (holding that the plaintiff established an injury-in-fact resulting not only from the barrier he

27  personally encountered, but also from the barriers related to his disability later revealed in

28  Case No.: 5:21-cv-01011-EJD
ORDER GRANTING CROSS-MSJ; DENYING MSJ

United States District Court
Northern District of California

1    discovery).

2         Here, Plaintiff did in fact physically visit the place of public accommodation and, at some

3    point, became aware of the barrier related to his disability.  While it is disputed *when* Plaintiff

4    discovered the barrier, at the time of the incident or later upon more thought, it is undisputed that

5    Plaintiff had actual knowledge of the barrier.  Defendants have not cited to any authority indicating

6    that the timing of when he acquired this actual knowledge is irrelevant to this specific inquiry.

7         Therefore, because Plaintiff is not required to personally encounter a barrier to establish

8    Article III standing, the Court finds that Defendants have failed to show that Plaintiff lacks Article

9    III standing as a matter of law and denies Defendants' motion on this ground.

10                    **2.    Standing for Injunctive Relief**

11        The Ninth Circuit has held that "a plaintiff must establish a sufficient future injury by

12   alleging that they are either currently deterred from visiting the place of public accommodation

13   because of a barrier, or that they were previously deterred and that they intend to return to the

14   place of public accommodation, where they are likely to reencounter the barrier."  *Langer v. Kiser*,

15   57 F.4th 1085, 1094 (9th Cir. 2023) (citing *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939,

16   944 (9th Cir. 2011)).  In other words, a plaintiff can show a future injury under the ADA by

17   presenting evidence that they are either (1) currently deterred from returning, or (2) intending to

18   return despite the barrier.

19        First, Defendants argue that Plaintiff has failed to present evidence that there was a specific

20   occasion where he wished to use the services but was deterred due to the barrier.  Reply ISO

21   Cross-MSJ 1.  Plaintiff rebuts that he is currently deterred from visiting the Gas Station and cites

22   to his declaration where he states that he would return if the Gas Station were made accessible,

23   suggesting that the barrier is currently deterring him from using the station.  Opp'n to Cross-MSJ

24   6–8; Hernandez Decl. ¶ 25.  The Court finds that Plaintiff's statement is evidence that creates a

25   genuine dispute of material fact, and the Court must view this evidence in the light most favorable

26

27

28   Case No.: 5:21-cv-01011-EJD
     ORDER GRANTING CROSS-MSJ; DENYING MSJ
                                   10

United States District Court
Northern District of California

United States District Court
Northern District of California

1   to the nonmoving party.  While Defendants question the veracity[1] of Plaintiff's statement that he is

2   in fact deterred, reaching a contrary conclusion requires a credibility determination inappropriate

3   for summary judgment.

4          Second, Defendants argue that Plaintiff has failed to show his intent to return to the

5   property.  Cross-MSJ 6.  However, Plaintiff is only required to show deterrence *or* intent to return.

6   *Chapman*, 631 F.3d at 944.  The Court finds that Plaintiff presented evidence to create a genuine

7   issue of material fact regarding whether he is deterred, therefore Plaintiff is not required to also

8   show his intent to return despite the barrier, and the Court will not address Defendants' arguments

9   on this theory.

10         Therefore, the Court finds that there are genuine disputes of material facts regarding

11  Plaintiff's deterrence and denies Defendants' motion on this ground.

12         ### 3.   Mootness

13         The inability to review moot cases derives from Article III's requirement that a "case or

14  controversy" exist between the parties.  *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting

15  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  Federal courts are "without power to decide

16  questions that cannot affect the rights of litigants in the case before them."  *Id.*  A claimed remedy

17  might become moot if "subsequent events make it absolutely clear that the allegedly wrongful

18  behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl.*

19  *Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000); *United States v. Concentrated Phosphate Exp.*

20  *Ass'n*, 393 U.S. 199, 203 (1968).  While a defendant's voluntary cessation of allegedly wrongful

21  conduct is unlikely to moot a case, it is possible for a defendant's voluntary cessation to moot a

22  _____

23  [1] The Court notes that that Plaintiff's history as a serial litigant "has no place in our standing
    analysis."  *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023).  The Ninth Circuit has repeatedly
24  rejected district courts making adverse credibility determinations based on past ADA litigation.
    *E.g.*, *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1034–39 (9th Cir. 2008)
25  (rejecting the district court's adverse credibility finding against a plaintiff who travels around the
    country to find ADA violations because it used her past ADA litigation to doubt her intent to
26  return); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) ("For the ADA
    to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for
27  committed individuals to bring serial litigation advancing the time when public accommodations
    will be compliant with the ADA.").
28  Case No.: 5:21-cv-01011-EJD
    ORDER GRANTING CROSS-MSJ; DENYING MSJ
                                        11

1   case. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  A defendant claiming its voluntary

2   compliance moots a case bears the formidable burden of showing the wrongful conduct will not

3   recur.  *Friends of the Earth, Inc.*, 528 U.S. at 189.

4          To reiterate, the Parties do not dispute that, while the platform at the Gas Station creates an

5   architectural barrier to access, removing the architectural barrier is not readily achievable.  Thus,

6   Plaintiff has not requested architectural changes, but instead requests alternative accommodations

7   to provide meaningful access to the Gas Station's services.

8          Here, Defendants do not argue that they voluntarily implemented new accommodations to

9   come into compliance since the initiation of this lawsuit.  Instead, Defendants argue that discovery

10  reveals they had already established in place the accommodations Plaintiff is entitled to under the

11  ADA during the time of Plaintiff's visit, and they maintain these accommodations today.  Cross-

12  MSJ 7–8.  Specifically, discovery revealed that there is signage, employees are trained on how to

13  serve disabled customers, including providing customers information about the products available,

14  and there are call buttons installed at each pump to request assistance.  *Id.*  Defendants argue that

15  Plaintiff would have been able to access the Gas Station's services had he attempted to seek

16  assistance.  *Id.*  Plaintiff does not contest that there are signs posted, employees have received

17  training to assist disabled customers, and call buttons are installed (though Plaintiff contests

18  whether the call buttons are operational).  Opp'n to Cross-MSJ 3–9.  Instead, Plaintiff argues that

19  these accommodations are still not enough to satisfy his requests.  *Id.*

20         Regarding the Gas Station's existing accommodations, the Parties do not dispute the

21  following facts.  The Gas Station typically operates with only one employee in the kiosk.  Blanco

22  Decl. ¶ 2.  Employees are trained to assist disabled customers upon request, including pumping the

23  patron's gas, retrieving products the patron wishes to purchase, and facilitating the patron's

24  purchase by existing the kiosk to facilitate payment.  *Id.*  ¶ 3; Singh Dep. 39–52.  The Gas Station

25  has two signs indicating that assistance will be provided for any purchase of products needed on

26  the window of the kiosk and on the refrigerator of drinks outside.  Blanco Decl. ¶ 3.  Each pump at

27  the Gas Station has a call button with an International Symbol of Accessibility icon adjacent that

28  Case No.: 5:21-cv-01011-EJD
    ORDER GRANTING CROSS-MSJ; DENYING MSJ

customers can press to call for assistance.  *Id.* ¶¶ 3–5.  Mr. Singh stated that, in his experience, disabled customers used the call button, honked, called the store, or approached the kiosk window to get the employee's attention for assistance in the past.  Singh Dep. 40–52, 76.  At the time of Plaintiff's visit, Plaintiff did not attempt to use the call button, did not read the signs on the window or refrigerator, and did not attempt to gain the attention of an employee in any manner. Hernandez Dec. ¶¶ 13–18.  Instead, Plaintiff learned of the existing accommodations over the course of litigation.  The parties dispute whether the call buttons were operational.  Ms. Blanco declared that she has personal knowledge that all call buttons are operational.  Blanco Dec. ¶¶ 3–5. Mr. Singh testified that he checked the call buttons each day during his employment, and he was employed during Plaintiff's visit.  Singh Dep. 77.  Plaintiff's investigator visited the Gas Station approximately four months after Plaintiff's visit and pressed at least three of the call buttons but stated that no employee exited the kiosk to assist him.  Bluhm Decl. ¶ 17.

The Court will address the ways in which existing accommodations moot each remedy requested in turn.

### a.    Training

Plaintiff requests "[t]raining to ensure all employees know how to assist persons with disabilities with payments, gas pumping, and product purchases, as well as how to respond to horn honking or calling (whichever means Defendants choose to alert[)]."  MSJ 22.  Defendants have submitted evidence that each employee is trained to assist customers upon request, including pumping the patron's gas, retrieving products the patron wishes to purchase, and facilitating the patron's purchase by existing the kiosk to facilitate payment.  Blanco Dec. ¶ 3; Singh Dep. 39–52.

Plaintiff argues that, despite this training, because cashiers have discretion whether to leave the cashier booth, they could possibly use that discretion to not assist disabled customers.  Reply ISO MSJ 10.  Plaintiff also suggests that an employee used their discretion to not acknowledge his private investigator who visited in July 2022.  MSJ 20.  Further, Plaintiff argues that existing training is inadequate because the evidence show that employees are only trained once at their original hire, and the last time an employee was trained was two years ago.  Opp'n to Cross-MSJ 4.

Case No.: 5:21-cv-01011-EJD
ORDER GRANTING CROSS-MSJ; DENYING MSJ

The Court finds that the training Plaintiff requests is already in place.  Plaintiff does not present any evidence to dispute Ms. Blanco's statement that employees are already trained to assist customers upon request, including pumping the patron's gas, retrieving products the patron wishes to purchase, and facilitating the patron's purchase by existing the kiosk to facilitate payment.  This training mirrors almost exactly Plaintiff's original demand for training "to ensure all employees know how to assist persons with disabilities with payments, gas pumping, and product purchases, as well as how to respond to horn honking or calling (whichever means Defendants choose to alert[)]."  MSJ 22.  The employees' discretion to leave the cashier booth and the frequency of training does not negate the undisputed fact that employees are indeed already trained to assist persons with disabilities in the manner requested by Plaintiff.

Given that this training already existed prior to the initiation of this lawsuit, the Court finds it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth*, 528 U.S. at 170.  Therefore, Plaintiff's request for training is moot.

### b.    Signage

Plaintiff requests "[c]onspicuous signage, including the ISA, posted where it can be seen from every fuel pump advising customers with disabilities that they may honk their horn for assistance with fuel purchases as well as Gas Station products for sale."  MSJ 22.  Defendants have submitted evidence that there are already two signs posted on the kiosk window and drink refrigerator outside the kiosk stating that assistance is available.  Blanco Decl. ¶ 3.  Defendants have also submitted evidence that there are call buttons installed at each pump displaying the ISA symbol and instructing customers to press the buttons for assistance.  Deposition of Sherri Jean Blanco ("Blanco Dep.") 177, ECF No. 63-2.   Defendants argue that the call buttons satisfy Plaintiff's request for a sign including ISA that instructs customers how to seek assistance at every fuel pump.

Plaintiff argues that the signs do not moot his request for signage because the signs do not let disabled customers know *how* to seek assistance, and the signs are not visible from every pump.  Opp'n to Cross-MSJ 3–5.  Plaintiff also disputes whether the call buttons were operational

on the day of his visit.  *Id.*

The Court finds that the call buttons moot Plaintiff's request for a sign indicating how customers can seek assistance.  While it is true that existing signs do not instruct customers on how to receive assistance and are not viewable from each pump, the call buttons satisfy Plaintiff's request by informing customers that assistance is available and instructing customers on how to receive assistance at each pump.

Given Plaintiff's lack of evidence, the Court cannot assume that the call buttons were not operational on the day of Plaintiff's visit.  While Plaintiff disputes the buttons' operability, Plaintiff does not support this dispute with evidence.  Plaintiff did not attempt to press the call button on the day of his visit, and Plaintiff did not supply any evidence that the call button did not work on the day of his visit.  The only evidence that Plaintiff provides is a declaration from Mr. Bluhm that states he pressed three buttons months after Plaintiff's visit, on April 26, 2021, and the employee did not come out to assist him.  Bluhm Decl. ¶ 17.  Not only does Mr. Bluhm's declaration fail to prove that the buttons did not work on the day of the visit, but the circumstances of Mr. Bluhm's experience are too vague.  Mr. Bluhm does not state how long he waited after pressing each button, whether he pressed each button in succession, whether he was in a car, on foot, or in a wheelchair when he pressed the button, what time of day he visited, etc.  Mr. Bluhm's account of the call buttons states in full:

> I observed that the gas pumps have a green button located in the credit card transaction area of the pump. That green button has the words "call attendant," and measures approximately 1/2 inch by 3/4 inch. I checked the functionality of these buttons by depressing them and awaiting a response. I performed this test on at least three of the gas pumps and the result for each was the same. I received no audible response via an intercom or otherwise, and no attendant appeared. After depressing the buttons, I looked to the cashier booth for some type of response (such as a waive of the hand or other cue that the cashier heard the call) but observed none. I therefore concluded that the buttons were not operational.

Bluhm Decl. ¶ 17.

Notably, the mere fact that an employee did not come out to assist Mr. Bluhm months after Plaintiff's visit does not necessarily indicate that the buttons were inoperable, and certainly not

United States District Court
Northern District of California

that they were inoperable on the day of Plaintiff's visit.  The employee could have been momentarily away from the cash register or assisting another customer.  Even further, Mr. Bluhm does not actually indicate in his declaration that there was an employee in the kiosk at all while he pressed the buttons.

In contrast to Plaintiff's lack of evidence, Defendants have supplied photos of the call buttons and testimony regarding their general operability.  Mr. Singh testified that he checked whether the call buttons were operational every day that he was on duty, and he was employed during Plaintiff's visit (though he does not remember if he worked that specific day).  Singh Dep. 77.  Mr. Singh also recalls a customer using the call buttons in the past.  *Id.* at 76.  Ms. Blanco stated that she has personal knowledge that each of the 10 call buttons worked as of November 16, 2022.  Blanco Dec. ¶¶ 3–5.  Ms. Blanco provided photos showing that each of the 10 buttons flash a signal on a screen inside the kiosk to notify the attendant, and a message appears at the pump indicating that an attendant has been called.  *Id.* at Exhibits B, C, ECF Nos. 56-12, 56-13.

Given that the call buttons existed prior to the initiation of this lawsuit, the Court finds it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 170.  Therefore, Plaintiff's request for signage is moot.

### c.    Product Information

Plaintiff requests "[a] means by which Gas Station employees can provide a listing to persons with disabilities regarding all products offered for sale . . . . [for example,] photographs on a company-provided iPad . . . or a printed menu of products."  MSJ 22.  Defendants have submitted evidence that employees are trained to, and do in fact, assist disabled customers with purchasing products upon request.  Blanco Decl. ¶ 3; Singh Dep. 39–52.

Plaintiff argues that relying on employees to inform customers of the available products is insufficient to provide equal access to the products in instances, for example, where a customer does not know what they would like to purchase and needs to know of all products available in order to decide.  Reply ISO MSJ 8.

The Court finds that Plaintiff's request for access to product information is moot.  Plaintiff

Case No.: 5:21-cv-01011-EJD
ORDER GRANTING CROSS-MSJ; DENYING MSJ

United States District Court
Northern District of California

1    does not dispute that there are two signs indicating that employees will assist with product

2    purchases, call buttons on every gas station pump indicating that customers can press the button

3    for assistance, and training to assist customers with product purchases in whichever way the

4    customer needs.  If a disabled customer wanted to know what products were for sale, the customer

5    could press the button on the pump, or acquire an employee's attention in any other manner they

6    wish, and the trained employee would assist by providing that information upon request.  While

7    the Gas Station may not currently provide a picture or list of the available products, the system in

8    place does in fact allow disabled customers to receive product information from employees.

9         Given that employees had already been trained to provide product information upon

10   request prior to the initiation of this lawsuit, the Court finds it "absolutely clear that the allegedly

11   wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth*, 528 U.S. at

12   170.  Therefore, Plaintiff's request for product information is moot.

                                        * * *

14        The Court finds that Plaintiff's ADA claims requesting training, signage, and product

15   information are moot in light of the existing accommodations.  The Court therefore **GRANTS**

16   Defendants' motion for summary judgment on this ground.

### 4.       Unruh Act Supplemental Jurisdiction

18        Finally, Defendants argue that the Court should decline to exercise supplemental

19   jurisdiction over Plaintiff's California state claim under the Unruh Act.

20        Federal courts may decline to exercise supplemental jurisdiction over a state law claim "in

21   exceptional circumstances."  28 U.S.C. § 1367(c)(4).  The Ninth Circuit does not require an

22   "explanation for a district court's reasons [for declining supplemental jurisdiction] when the

23   district court acts under" 28 U.S.C. §§ 1367(c)(1)–(3), but does require a district court to

24   "articulate why the circumstances of the case are exceptional in addition to inquiring whether the

25   balance of the *Gibbs* values[, economy, convenience, fairness, and comity,] provide compelling

26   reasons for declining jurisdiction in such circumstances."  *Exec. Software N. Am. Inc. v. U.S. Dist.*

27   *Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994), *overruled on other grounds*

28   Case No.: 5:21-cv-01011-EJD

United States District Court
Northern District of California

ORDER GRANTING CROSS-MSJ; DENYING MSJ

1   by *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).  According to the

2   Ninth Circuit, this "inquiry is not particularly burdensome."  *Id.*

3          When a "high-frequency" litigant asserts a California Unruh Act claim in federal court

4   alongside an ADA claim, this will typically constitute an exceptional circumstance that justifies

5   dismissal of the Unruh Act claim.  *See Arroyo v. Rosas*, 19 F.4th 1202, 1211–14 (9th Cir. 2021);

6   *Garcia v. Maciel*, 2022 WL 395316, at *2–5 (N.D. Cal. Feb. 9, 2022); *Johnson v. Right Crons Inc.*,

7   2021 WL 3565441 (N.D. Cal. Aug. 11, 2021).  Specifically, the Ninth Circuit noted that a "recent

8   confluence of several California-law rules have combined to create a highly unusual systemic

9   impact on ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact

10  on federal-state comity."  *Arroyo v. Rosas*, 19 F.4th at 1211.  More recently, in *Vo v. Choi*, the

11  Ninth Circuit noted that "[t]here is little doubt that the first prong is satisfied" where a case lies in

12  the same legal landscape as *Arroyo*, i.e., where, as here, a serial plaintiff regularly brings California

13  Unruh Act claims in California federal courts.  *Vo v. Choi*, 49 F.4th 1167, 1171 (9th Cir. 2022).

14         Here, the Court finds that the California legislature's clear goal of increasing the

15  procedural requirements for bringing Unruh Act claims creates an "exceptional" circumstance in a

16  federal court's consideration of whether to exercise supplemental jurisdiction over an Unruh Act

17  claim.  In considering the Gibbs factors of economy, convenience, fairness, and comity, the Court

18  finds declination of supplemental jurisdiction appropriate.

19         The Court first finds the principle of comity "weighs strongly in favor of declining

20  jurisdiction because 'retention of supplemental jurisdiction over ADA-based Unruh Act claims

21  threatens to substantially thwart California's carefully crafted reforms in this area and to deprive

22  the state courts of their critical role in effectuating the policies underlying those reforms.'"  *Brooke

23  v. Disney Way Hotel Partners LLC*, No. 23-cv-00082-FWSADS, 2023 WL 3551966, at *4 (C.D.

24  Cal. Apr. 28, 2023) (quoting *Arroyo*, 19 F.4th at 1213).

25         The Court also finds the fairness factor to weigh in favor of declining supplemental

26  jurisdiction, as Plaintiff is a high-frequency litigant who may "be engaging in forum-shopping to

27  avoid California's additional procedural requirements," such that exercising supplemental

28  Case No.: 5:21-cv-01011-EJD
    ORDER GRANTING CROSS-MSJ; DENYING MSJ

1    jurisdiction would be unfair to the Defendant.  *See id.* (citations omitted); *see also, e.g., Shayler v.*

2    *1310 PCH, LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022) (observing the "procedural oddity" between

3    California's "attempt[ ] to limit abusive lawsuits under these statutes by imposing stricter

4    procedural requirements and higher filing fees" on high-frequency litigants in state court and the

5    ability to "circumvent the restrictions on high-frequency litigants by filing their complaints in

6    federal court, asserting federal question jurisdiction over the ADA claim and supplemental

7    jurisdiction over the state-law claims");  *Gastelum v. Tri-County Hosp.*, 21-cv-05291-VKD, 2023

8    WL 1442903, at *6 (N.D. Cal. Feb. 1, 2023) ("[F]airness also counsels in favor of declining

9    jurisdiction over Mr. Gastelum's Unruh Act claim. Allowing Mr. Gastelum to pursue his state law

10   claim here would 'countenance "a wholesale evasion of . . . critical limitations on damages relief"

11   that the California legislature has seen fit to impose for claims under that statute.'"); *Schutza v.*

12   *Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) ("It is unclear what advantage—other

13   than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since

14   his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act.").

15          Finally, the factors of economy and convenience weigh in favor of declining supplemental

16   jurisdiction.  The Court has granted Defendants' summary judgment as to Plaintiff's ADA claim,

17   and the Court has not issued any other substantive rulings in this action or expended substantial

18   resources on this case.

19          Therefore, the Court finds it proper to exercise its discretion to deny supplemental

20   jurisdiction given the exceptional nature of Unruh Act claims brought in federal court, the fairness

21   concerns regarding forum shopping, and the comity concerns regarding thwarting California's

22   legislative intent.

23          **C.      Plaintiff's Motion for Summary Judgment**

24          Given that the Court finds Plaintiff's ADA claim moot and the Court declines jurisdiction

25   over the Unruh Act claim, Plaintiff has no remaining claims before the Court.  Therefore, the

26   Court **DENIES** Plaintiff's motion for summary judgment.

27

28   Case No.: 5:21-cv-01011-EJD

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' cross-motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining Unruh Act claim and **DISMISSES** the claim without prejudice.  The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: December 4, 2023

_____
EDWARD J. DAVILA
United States District Judge